**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**MARRIOTT INTERNATIONAL, INC., ET AL.**   **CIVIL ACTION**

**VERSUS**   **NO. 17-10590**

**DEON DANNA**   **SECTION "B"(3)**

## ORDER AND REASONS

Defendant filed a motion to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. Rec. Doc. 36. Plaintiffs timely filed an opposition. Rec. Doc. 37. Defendant then sought, and was granted, leave to file a reply. Rec. Doc. 41.

For the reasons discussed below,

**IT IS ORDERED** that Defendant Deon Danna's motion to dismiss is **GRANTED** and Plaintiffs' claim against Defendant is **DISMISSED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant worked at the Ritz Carlton in New Orleans from 2000 to 2010, when he was fired. Rec. Doc. 35 ¶ 17. In 2011, Defendant sued Ritz Carlton and its corporate parent, Marriott, in Louisiana state court, seeking damages for wrongful termination. *Id.* ¶ 18. The lawsuit is ongoing. *Id.* In 2013, Defendant was hired by the Sheraton in New Orleans. *Id.* ¶ 19. When Defendant applied for the Sheraton position, he signed an arbitration agreement. *Id.* ¶¶ 2-10. Plaintiffs allege that Defendant lied about his work history and educational qualifications on his employment

1

application. *See id.* ¶¶ 28-30. In 2016, Marriott purchased Sheraton. *Id.* ¶ 12-14. In August 2017, Defendant resigned from his position at Sheraton after his lies were discovered. *Id.* ¶¶ 19-20.

On October 12, 2017, Plaintiffs filed a Complaint to compel arbitration. *See* Rec. Doc. 1. Defendant then filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Rec. Doc. 10. The Court granted Defendant's motion to dismiss on ripeness grounds because Plaintiffs' complaint sought to compel arbitration of claims that both parties agreed did not arise out of Defendant's employment at Sheraton. *See* Rec. Doc. 30.

The Court subsequently granted Plaintiffs leave to file an Amended Complaint, which seeks to compel arbitration of Plaintiffs' claims against Defendant. *See* Rec. Doc. 35. Specifically, Plaintiffs seek, via arbitration, a declaratory judgment that Defendant cannot obtain damages from Plaintiffs ever again (or at least through 2032). *See id.* ¶ 42. Defendant then filed the instant motion to dismiss, arguing that the Court lacks subject matter jurisdiction and that Plaintiffs' Amended Complaint fails to state a claim. *See* Rec. Doc. 36.

**LAW AND ANALYSIS**

Plaintiffs' Amended Complaint seeks to compel arbitration of their claims against Defendant. *See* Rec. Doc. 35. The Federal Arbitration Act (FAA) allows "[a] party aggrieved by the alleged

2

failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Defendant argues that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim. *See* Rec. Doc. 36. Because the Court concludes that there is no subject matter jurisdiction, the Court does not address the sufficiency of Plaintiffs' pleadings.

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the parties asserting jurisdiction bear the burden of "alleg[ing] a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). A federal district court has jurisdiction over a complaint to compel arbitration when, "save for such [arbitration] agreement, [the district court] would have jurisdiction . . . [over] the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4; *see also Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 923 (5th Cir. 2017) (The FAA "does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have save for the arbitration agreement." (internal quotation marks and alteration omitted)).

"[A] party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Lower Colo. River Auth.*, 858 F.3d at 923 (citing *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009)). Accordingly, "any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute . . . would similarly prevent a district court from having jurisdiction to compel arbitration."[1] *Id.* at 923. Because Plaintiffs lack standing and have not pled a ripe controversy with Defendant, Plaintiffs' Amended Complaint must be dismissed. *See Lower Colo. River Auth.*, 858 F.3d at 927; *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam) ("[S]tanding and ripeness are essential components of federal subject-matter jurisdiction.").

## A. Standing

Constitutional standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."[2] *Lujan v.*

---

[1] Plaintiffs mistakenly argue that "resolution of any issue about mootness or ripeness involves a merits issue, and is outside of the limited confines of this Court's review, which concerns the validity and scope of the Arbitration Agreement." Rec. Doc. 37. Rather, as both the Supreme Court and the Fifth Circuit have concluded, a district court must ensure that it has subject matter jurisdiction over the underlying dispute between the parties before considering a complaint to compel arbitration. *See Vaden*, 556 U.S. at 66; *Lower Colo. River Auth.*, 858 F.3d at 923.

[2] Plaintiffs would also need standing to sue under the arbitration agreement, a question which turns in part on the terms of the arbitration agreement—it is a question of state contract law. *See*

*Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Constitutional standing has three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal quotation marks, citations, and alterations omitted).

Plaintiffs' underlying dispute concerns a declaratory judgment. "[W]hen a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). The Supreme Court has "repeatedly reiterated that threatened injury

---

*Perry v. Thomas*, 482 U.S. 483, 492 (1987) (The "standing argument simply presents a straightforward issue of contract interpretation." (internal quotation marks omitted)); *Green Tree Servicing, LLC v. House*, 890 F.3d 493, 501-02 (5th Cir. 2018) (applying state contract law to determine whether plaintiffs could enforce arbitration agreement). "Under Louisiana law, ordinary contract principles govern the question of who is bound by an arbitration agreement." *Green v. Chase Manhattan Auto. Fin. Corp.*, No. 03-2179, 2003 WL 22872102, at *6 (E.D. La. Dec. 3, 2003) (internal quotation marks omitted). But as discussed herein, because Plaintiffs lack standing to pursue the underlying claim against Defendant, the Court lacks subject matter jurisdiction over the Amended Complaint to compel arbitration. *See Lower Colo. River Auth.*, 858 F.3d at 923.

5

must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks, citations, and alteration omitted). A "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410.

The injury that Plaintiffs anticipate is an award of damages in Defendant's state lawsuit for wrongful termination. *See* Rec. Doc. 35 ¶ 40 ("[T]he disputes and claims described [in the Amended Complaint] consist of and are based on any damages or losses that Defendant is claiming against Marriott and/or Ritz-Carlton that allegedly arose or were sustained by Defendant on or after" the Defendant's employment at the Sheraton.), ¶ 42 (explaining declaration sought by Plaintiffs to protect against potential damages award). Plaintiffs do not allege that Sheraton is a party to Defendant's state lawsuit. *See* Rec. Doc. 35 ¶ 18. Therefore, Plaintiffs have not pled that Sheraton will incur damages liability in Defendant's state lawsuit, and accordingly have not pled an injury in fact as to Sheraton.

Regardless, the alleged injury will not arise unless Defendant prevails in his state lawsuit and is awarded damages. Courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their

6

judgment." *Clapper*, 568 U.S. at 413. Moreover, "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result." *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990).

This is problematic for Plaintiffs because, when "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," Plaintiffs bear the burden of alleging facts making it plausible "that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562 (internal quotation marks and citations omitted). Plaintiffs' Amended Complaint does not allege facts that suggest Defendant will prevail in his state lawsuit and win an award of damages, therefore Plaintiffs have not established an "injury in fact" and lack standing to pursue the underlying dispute. *See Clapper*, 568 U.S. at 410; *Whitmore*, 495 U.S. at 159.

Even if such damages are sufficiently certain to satisfy the injury prong of the standing analysis, Plaintiffs have not demonstrated that those damages are causally related to Defendant's lies on his Sheraton employment application. Plaintiffs allege that "Defendant's wrongful acts and false statements in connection with his employment at the [Sheraton]

severed any causal or other connection, nexus or link with any damages or losses allegedly caused by reason of the termination of Defendant's prior employment with the" Ritz Carlton. Rec. Doc. 35 ¶ 42 (referring to Defendant's pre-existing state lawsuit). Therefore, under the *Lujan* framework, Defendant's lies on his employment application are the "conduct complained of;" the lies allegedly entitle Plaintiffs to relief. *Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of."). This allegation is also central to the viability of Plaintiffs' claim because it ties the putative dispute to the arbitration agreement that Defendant signed during the Sheraton hiring process. *See* Rec. Doc. 35 ¶¶ 2-10. Therefore, the potential future damages award "has to be fairly traceable to" Defendant's lies on his Sheraton employment application. *Lujan*, 504 U.S. at 560. Plaintiffs have not made such a showing. Instead, they offer a tenuous explanation of how Defendant's lies on his Sheraton employment application are tied to any potential damages award in Defendant's pre-existing state lawsuit.

Reading Plaintiffs' Amended Complaint generously, Plaintiffs have alleged the following causal chain. First, Defendant's pre-existing state lawsuit for wrongful termination from the Ritz Carlton seeks monetary damages because Defendant was unable to secure a job with comparable pay after being terminated. *See* Rec. Doc. 35 ¶¶ 23, 25. Second, a potential measure of damages in the

8

pre-existing state lawsuit is the differential between (1) what Defendant would have earned if he continued working at the Ritz Carlton and (2) Defendant's actual earning potential since being terminated from the Ritz Carlton. *See id.; see also* Rec. Doc. 37 at 7-8. Third, Defendant worked at the Sheraton after being terminated from the Ritz Carlton. *See* Rec. Doc. 35 ¶¶ 19-22. Fourth, Defendant was terminated from the Sheraton because of his lies on his employment contract. *See id.* ¶ 42. Fifth, Defendant secured another lower-paying job after being terminated from the Sheraton. *See id.* ¶¶ 26-27. Therefore, if Defendant prevails in his state-court lawsuit, the damages he is awarded will be caused by Defendant's lies on his Sheraton employment application. *See id.* ¶ 42.

The alleged causal relationship between Defendant's lies and the potential damages in the state lawsuit breaks down under scrutiny. The question of liability in Defendant's state lawsuit does not depend on Defendant's lies on his Sheraton employment application; the lies occurred *after* Defendant was terminated from the Ritz Carlton. Whether Defendant's termination from the Ritz Carlton was permissible is not fairly traceable to Defendant's *subsequent* honesty, or lack thereof, when applying for a job at the Sheraton. Absent such a fairly traceable causal relationship, Plaintiffs would lack standing to pursue the desired declaratory relief in federal district court. *See Lujan*, 504 U.S. at 560.

9

Therefore, this Court lacks jurisdiction over Plaintiffs' efforts to accomplish the same result via a complaint to compel arbitration. *See Lower Colo. River Auth.*, 858 F.3d at 923.

Even if Defendant's lies on the Sheraton employment application could play some role in calculating the quantum of damages that might be awarded in the state lawsuit, the connection would be too attenuated to satisfy the rigors of constitutional standing. Plaintiffs do not explain how Defendant's lies on his Sheraton employment application will affect his future earnings. *See* Rec. Docs. 35 ¶¶ 22-29, 40; 37 at 7-8. If the lies do play a role, it will be as one of many considerations taken into account by the expert witnesses, judge, and jury in Defendant's state lawsuit. "[B]ecause [Plaintiffs] can only speculate as to whether" or how Defendant's future earnings would be affected by Defendant's lies, as opposed to some other combination of factors, Plaintiffs "cannot satisfy the 'fairly traceable' requirement." *Clapper*, 568 U.S. at 413.

**B. Ripeness**

"[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction." *Lower Colo. River Auth.*, 858 F.3d at 922. "Under Article III of the Constitution, federal courts are confined to adjudicating cases and controversies. And to be a case or controversy for Article III jurisdictional purposes, the litigation must be ripe for decision, meaning that it must not be

premature or speculative." *Id.* (internal quotation marks and citations omitted). When deciding whether a complaint to compel arbitration is ripe, a court "must look through the [complaint] . . . to determine whether the underlying dispute presents a sufficiently ripe controversy to establish federal jurisdiction." *Id.* (citing *Vaden v. Discover Bank*, 556 U.S. 49 (2009)).

"In the declaratory judgment context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id.* at 924. "A controversy, to be justiciable, must be such that it can presently be litigated and decided." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1965). In arbitration, Plaintiffs intend to seek a declaratory judgment that, because Defendant lied on his employment application, Defendant cannot seek damages from Plaintiffs ever again (or at least through 2032). *See* Rec. Doc. 35 ¶ 42. Defendant made the allegedly false statements in 2013, *see id.* ¶¶ 29-30, so any controversy is immediate; if Defendant's alleged lies gave rise to a legal remedy, Plaintiff would be able to seek such remedy now. *See Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 839-41 (5th Cir. 2003).

But Defendant challenges another aspect of ripeness, namely that there are no "adverse legal interests" in controversy because Plaintiffs have not articulated a cause of action that entitles

11

them to a declaratory judgment. *See* Rec. Doc. 36-2 at 8-11. When granting leave for Plaintiffs to file their Amended Complaint, the Court reasoned that the Amended Complaint "just minimally describe[s] a ripe controversy between" the parties because it appeared that Plaintiffs intended "to assert the rights they understand themselves to possess under Defendant's employment contract with Sheraton." Rec. Doc. 34 at 9.

Upon consideration of Defendant's motion to dismiss and further examination of the Amended Complaint, Defendant is correct.[3] Nowhere in their Amended Complaint do Plaintiffs explain the legally-cognizable claim that underpins their demand for declaratory relief.[4] *See* 28 U.S.C. § 2201 ("In a case of actual

---

[3] Defendant was actually an at will employee; Plaintiffs do not allege an employment contract with Defendant. *See* Rec. Doc. 37-1 at 2 (The arbitration agreement states that it "is not intended to be and shall not be deemed to constitute a contract of employment for any specific duration, and that my employment shall be and remain at will."); 1-5 at 4 (Defendant's signed employment offer letter confirms that Defendant was an 'at will' employee and that "except for [the offer] letter, there is and shall not be any written contract between [Defendant] and [Sheraton] concerning this offer of employment or [Defendant's] prospective employment, and that this [offer] letter is not intended to be and is not a contract of employment.").

[4] The parties' arbitration agreement incorporates the American Arbitration Association's National Rules for the Resolution of Employment Disputes. *See* Rec. Doc. 37-1 at 1. Those rules create a procedure for demanding arbitration. *See id.* Plaintiffs do not appear to have initiated an arbitration proceeding against Defendant, so the Court cannot examine those filings to identify a legally-cognizable claim. *See* Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures 11-12 (2009), https://www.adr.org/Rules (setting out the procedure for a party to initiate an arbitration proceedings by filing a demand with the

controversy," a district court "may declare the *rights* and other *legal relations* of any interested party seeking such declaration." (emphasis added)). Neither do Plaintiffs explain why sweeping declaratory relief would be a permissible remedy for Defendant's past lies, a discrete harm that would normally be redressed (if at all) with compensatory damages.

In response to Defendant's argument that "[P]laintiffs have not provided any contentions or facts supporting any recognized cause of action against" Defendant, Rec. Doc. 36-2 at 14, Plaintiffs simply reassert that they have "disputes and claims" against Defendant, *see* Rec. Doc. 37 at 7, 11-13, 15. Plaintiffs further argue that they "have not filed their substantive claims and disputes herein" because they are waiting until arbitration. *See id.* at 15. Plaintiffs cannot keep Defendant and the Court in suspense. The law does not provide a remedy for every dispute and perceived injury, and a federal district court has jurisdiction over only a subset of possible causes of action. Without pleading the "substantive claims and disputes" that Plaintiffs would attempt to assert in arbitration, Plaintiffs have not pled facts that plausibly establish a ripe controversy.

---

American Arbitration Association (AAA); *see also* Am. Arbitration Ass'n, Employment Arbitration Rules Demand for Arbitration, https://www.adr.org/EmploymentForms (instructing claimant to "describe the nature of each claim" and to send a copy of the demand to the AAA "[t]o begin proceedings").

In a declaratory judgment action, "[a] party's legal interest must relate to an actual claim." *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990) (internal quotation mark omitted). The declaratory judgment is merely the remedy sought, a plaintiff's pleadings must establish the plaintiff's entitlement to the declaratory judgment, which requires pleading a valid cause of action. Failure to plead an underlying legal claim against Defendant is fatal to Plaintiffs' Amended Complaint. *See In re Oil Spill*, 808 F. Supp. 2d 943, 966-67 (E.D. La. 2011) (dismissing claim for declaratory relief because plaintiffs failed to "identif[y] a cause of action that would entitle them to their requested relief") (citing *HAVEN*, 915 F.2d at 171). A court cannot adjudicate a complaint for declaratory judgment when there is no underlying cause of action. Because Plaintiffs have not pled a cause of action that would entitle them to a declaratory judgment after being given an opportunity to do so by amendment, the dispute underlying their Amended Complaint is not ripe and this Court lacks subject matter jurisdiction. *See Lower Colo. River Auth.*, 858 F.3d at 923.

New Orleans, Louisiana, this 22nd day of August, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE